UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ALLIANCE MARINE SERVICES, LP                    CIVIL ACTION

V.                                              NO. 17-8124

GARY YOUMAN                                     SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are two motions by Alliance Marine Services, LP: (1) motion for partial summary judgment on the <u>McCorpen</u> defense to the maintenance and cure claims; and (2) motion for partial summary judgment on punitive damages claims. For the reasons that follow, both motions are GRANTED.

**Background**

This lawsuit arises from a seaman's claim that he injured his lower back during a rescue drill operation.

In the summer of 2015, Gary Youman was hired several days after applying for employment with Alliance Marine Services, LP. In his employment application, Mr. Youman denied having any "physical handicap" or illness that may affect his work. As part of the hiring process, AMS sent Mr. Youman for a United States Coast Guard Pre-Employment Physical. In completing a medical history form as part of this examination, Mr. Youman denied any

history of back injuries or back pain.  AMS submits that it relied upon the medical history form in hiring Mr. Youman.[1]  Mr. Youman admits that some of his representations on the medical history form were false (for example, Mr. Youman indicated that he did not have prior back injuries).

About one year into his employment, on July 29, 2016, Mr. Youman asserted that he was injured during a Fast Response Craft drill, claiming that he hurt his back when he was thrown to the deck of the vessel during the drill.[2]  The alleged injury happened while Gary Youman was employed by AMS as a Jones Act seaman aboard the FPSO TURRITELLA, a vessel owned and operated by SBM Stones Operations, LLC.  Because Mr. Youman claimed he was injured while in the service of a vessel, AMS removed him from the vessel and transported him for medical treatment.

On August 5, 2016, Mr. Youman was diagnosed with a lumbar sprain.  AMS retained Aucoin Claims Service, Inc. to investigate

---

[1] AMS submits an unsworn declaration by its President, John W. Lovell, who attests to this fact.  But Mr. Youman disputes this, noting that Mr. Lovell's declaration is "self-serving."

[2] Mr. Youman alleges that he severely injured his low back when he was thrown to the deck of the vessel while the vessel was being re-secured to the davit; in particular, he alleges that there was insufficient slack in the wire falls from the davit when the vessel was being re-secured to the davit, which caused the vessel to jerk out of the water when the seas dropped from underneath the rescue boat, causing Youman to lose his grip and balance and throwing him to the deck, where he landed on his back.

Mr. Youman's alleged injury and administer any necessary maintenance and cure benefits.

AMS was in frequent contact with Mr. Youman after the alleged injury. AMS attempted to have a claims adjuster meet with Mr. Youman to help determine his financial situation and assess what happened on board the Fast Response Craft. The claims adjuster, Patrick Aucoin, spoke with Mr. Youman on the telephone and a meeting was scheduled for August 26, 2016. The day before the meeting, Mr. Youman cancelled the appointment. On August 29, 2016, Mr. Youman retained an attorney. AMS informed Mr. Youman's attorney that its authorization for Mr. Youman to treat with Dr. Amy Thompson was "under protest," but still agreed to provide prompt payment for his treatment.

After the alleged incident, AMS began maintenance payments of $35.00/day and funded Mr. Youman's medical care. During its investigation, AMS learned that Mr. Youman began having back pain, starting in late 2012 (after presenting to the emergency room after an injury at work) and lasting through at least 2013 or mid-2014.[3] Mr. Youman initially claimed that he injured his back lifting a heavy pipe while working for Mearsk. As a result of this prior injury, Dr. Amy Berstein treated Mr. Youman's complaints of left

---

[3] Mr. Youman previously suffered a work-related knee injury in 2011 while employed by Crowley Maritime, and he eventually sued Crowley.

thoracic paraspinal spasms; Dr. Michael Scharf at Jacksonville Orthopedic diagnosed Mr. Youman with "low back pain, resolving."

On May 21, 2013, Mr. Youman slipped on the galley deck of a Maersk vessel, claiming to injure his back again. On July 1, 2013, Maersk sent Mr. Youman to George Washington Hospital, where he reported constant pain since May 21 at a 9/10 level and that "nothing help[s]." The doctors at George Washington believed Mr. Youman had a "low back strain," and opined that "he cannot return to work at this time given his level of discomfort." On July 3, 2013, Mr. Youman was admitted to the emergency room at Orange Park Medical Center in Jacksonville, complaining of abdominal pain; he reported chest pain and shortness of breath, which he attributed to his back pain.

On July 24, 2013, Mr. Youman was treated for the first time at Southern Orthopedic by Dr. Heekin. He claimed to have pain at the level of 10/10, and he described the pain as persistent and radiating into his upper back, and aggravated by climbing stairs, bending, lifting, lying/rest, sitting, standing, and straining. Dr. Heekin's diagnosis was "lumbar spondylosis without myelopathy: likely facetogenic versus annular tear.

On August 30, 2013, Mr. Youman was examined by Dr. Heekin for his low back pain; he complained of lumbar spine pain on an 8/10 level, describing the pain as persistent and included ache and

discomfort.  He noted that physical therapy was not helping, and he requested the doctor's prognosis to assist with "ongoing litigation issues."

In December 2013 and January 2014, a few weeks after joining Liberty Maritime, Mr. Youman complained of pain in his left thigh; he was diagnosed with an ACL tear in early 2014, leading to arthroscopic knee surgery in November 2014.  Mr. Youman admitted to concealing a prior 2001 knee injury in college and his later knee injury at Crowley on his Seaman's Declaration of Health, and the Crowley injury was discovered by Liberty, which sought reimbursement and recommended that Mr. Youman be permanently suspended from sailing with Liberty Maritime.

On July 14, 2014, Mr. Houman completed a medical history questionnaire to secure a "declaration of fitness for duty" for employment by Overseas Ship Management, Inc.  On the fitness for duty form, Mr. Youman denied having back or neck pain, and he denied ever having any injury or illness for which he received medical treatment exceeding seven days.

On August 3, 2014, Jacksonville Fire and Rescue was called to Mr. Youman's house where Mr. Youman appeared to be having a panic attack or emotional breakdown.  The EMT records indicate that "the patient states the [sic] he has had chest and back pain for three years[,]" but the EMT on scene could not confirm whether Mr. Youman

was having back pain on that date.  The next day, Mr. Youman was admitted for treatment at TBJ Behavior Center a/k/a River Point Behavioral.  The River Point Discharge Summary indicates excessive alcohol consumption had initiated Mr. Youman's breakdown, and that "[t]he patient endorsed all symptoms of depression[.]"  His treatment included medication management and group therapy, and he was prescribed 500 mg of Tylenol three times per day as needed for pain.  Among the discharge diagnoses indicated by Dr. Thomas Thommi, Mr. Youman was diagnosed with "low back pain," "major depressive disorder," and "alcohol abuse."  However, Dr. Thommi testified in this litigation that he listed "low back pain" as a past history complaint, not a present diagnosis.

On August 21, 2014, Mr. Youman completed a merchant mariner medical history form in which it appears that he wrote "injury lower back resolved."  On a December 10, 2014 Merchant Mariner Credential Medical Evaluation Report, used to determine whether an applicant seeking to renew a credential is physically capable of performing their duties, Mr. Youman denied a history of chest pain, limitation of any major joint, joint surgery, recurrent back pain, depression, anxiety, alcohol or substance abuse, and any psychiatric disease or counseling.  He acknowledged a back injury in July 2013, but he noted "no treatment (p.t.) since 8/2013 for lower back."

After the alleged injury on the rescue boat while working for
AMS on July 29, 2016, Mr. Youman came under the care of Dr. Donald
Dietze, who made a medical causation determination in his first
meeting with Mr. Youman that his low back and intermittent leg
pain was attributable to his alleged work injury on July 29, 2016;
Dr. Dietze recommended surgery.  During his deposition testimony,
Dr. Dietze admitted that he made the medical causation
determination without having viewed the video of the incident, but
stated that he was shown the video prior to his deposition
testimony.  Dr. Dietze admitted that he made the medical causation
determination without having been informed of Mr. Youman's prior
lower back injury lawsuit against Maersk and his orthopedic lawsuit
against Crowley.  Dr. Dietze admitted that Mr. Youman never
informed him that he had suffered a prior work-related injury while
employed by AMS while pulling a strap from under a crate.  Dr.
Dietze admitted that he made no effort to inquire into Mr. Youman's
past prescription history related to prior injuries.  Dr. Dietze
testified that he did not view the MRI results from Mr. Youman's
prior back injuries in 2012 and 2013, but that he instead relied
on the radiologist's report.  Dr. Dietze admitted that he made the
medical causation determination based in part on the assumption
that Mr. Youman's 2012-2013 back injuries had resolved based in
part on Mr. Youman's statements and in part on the MRI scan.

Dr. Gabriel Tender, a board-certified neurosurgeon, conducted an independent medical exam on Mr. Youman. Dr. Tender reviewed Mr. Youman's medical history, including past MRIs, and issued a report dated May 3, 2017. Dr. Tender "do[es] not believe that [Mr. Youman] has a primary pain generator in the lumbar spine[, and that] [t]here is no objective evidence of acute traumatic injury to [Mr. Youman's] lumbar spine related to the July 29, 2016 accident." Dr. Tender does not believe that the surgery recommended (and ultimately performed) by Dr. Dietze was warranted.

On October 10, 2017, Mr. Youman underwent an L4-5 anterior lumbar discectomy and artificial disc replacement performed by Dr. Dietze. Prior to the surgery, Mr. Youman's attorney requested authorization from AMS and, following the surgery, he requested reimbursement for the surgery as well as the discogram and post-discogram CT. AMS declined to fund the surgery pending its ongoing investigation of Mr. Youman's claim for maintenance and cure.

AMS retained a radiologist, Dr. David Fakier, to review Mr. Youman's pre-incident and post-incident MRI images. Dr. Fakier reviewed the images, and opined that there were no changes in Mr. Youman's lumbar spine between the pre-incident and post-incident images. AMS declined to fund the surgery ultimately performed by Dr. Dietze in light of: its assessment of the video footage of Mr.

Youman's alleged accident; Mr. Youman's abrupt refusal to be interviewed after the incident, which hindered its investigation; Mr. Youman's significant history of chronic back pain, which Mr. Youman failed to disclose; Mr. Youman's history of suing prior maritime employers for alleged injuries; the lack of evidence that Mr. Youman's back pain complaints in 2012 and 2013 were ever fully resolved; Dr. Tender's opinion that Mr. Youman suffered no traumatic injury and is not a candidate for surgery; and Dr. Fakier's opinion that there is no change in Mr. Youman's lumbar spine after comparing the pre- and post-incident MRIs.

Dr. Tender issued an Addendum Report in October 2018 in which he confirmed his initial opinion that no surgery was warranted and that Youman did not suffer any traumatic spinal injury on July 29, 2016. Dr. Tender also agreed with Dr. Fakier's interpretation of the pre-incident and post-incident MRI studies. Dr. Tender further noted that the surgery ultimately performed by Dr. Dietze did not resolve Youman's pain complaints.

Meanwhile -- after Youman filed two separate lawsuits, one which he dismissed and one which was stayed[4] -- on August 22, 2017,

---

[4] Mr. Youman first sued AMS and SBM alleging Jones Act and general maritime law claims in this Court on October 20, 2016. Four days later, he dismissed the lawsuit without prejudice. Mr. Youman then sued the same defendants in state court in Baton Rouge; when SBM prevailed on its motion to dismiss for improper venue, Mr. Youman moved to stay the state court action due to the possibility

AMS filed this lawsuit in this Court, seeking a declaration that AMS is not liable for Youman's accident and does not owe Youman maintenance and cure. Youman answered, counter-claimed (alleging Jones Act negligence and maintenance and cure claims), and then filed a third-party complaint against SBM (alleging the same unseaworthiness and maritime claims he previously advanced in both prior lawsuits). AMS now moves for partial summary relief regarding whether it has a valid McCorpen defense against Mr. Youman's claim for maintenance and cure and whether AMS may be held liable for punitive damages for its refusal to fund certain medical treatments.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a

---

of incomplete relief in the state court proceeding. The stay was granted.

reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).  Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

### *A.*

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."  Meche v. Doucet, 777 F.3d 237, 244 (5th Cir. 2015)(quoting Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212 (5th Cir. 2006)(citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968))).  "'Maintenance is a daily stipend for living expenses,' whereas

'cure is the payment of medical expenses.'" Id. (citations omitted).

Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." McCorpen, 396 F.2d at 548. Notwithstanding this general principle, a court will deny maintenance and cure when a seaman "knowingly or fraudulently conceals" his illness or injury from the shipowner at the time he was employed. Id. A Jones Act employer may investigate a seaman's claim for maintenance and cure. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005). An employer may rely on legal defenses to deny maintenance and cure, including the defense that the seaman wrongfully concealed a preexisting medical condition. McCorpen, 396 F.2d at 548-49. Under McCorpen, an employer is relieved from its duty to pay maintenance and cure in certain circumstances:

> where the shipowner requires a seaman to submit to a
> pre-hiring medical examination or interview and the
> seaman intentionally misrepresents or conceals material
> medical facts, the disclosure of which is plainly
> desired, then he is not entitled to an award of
> maintenance and cure. Of course, the defense that a
> seaman knowingly concealed material medical information
> will not prevail unless there is a causal link between
> the pre-existing disability that was concealed and the
> disability incurred during the voyage.

Id. at 549 (internal citations omitted). Accordingly, to establish a McCorpen defense to maintenance and cure, an employer must show

13

that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to AMS's decision to hire him; and (3) there is a causal link between the withheld information and his injury complaint. <u>Meche</u>, 777 F.3d at 244-45.

*B.*

In support of its <u>McCorpen</u> defense, AMS submits that Youman lied about his history of back pain and injuries on a medical questionnaire form submitted during the employment application process at AMS, and now seeks maintenance and cure for a low back injury. AMS submits that partial summary relief in its favor dismissing the plaintiff's maintenance and cure claim is appropriate because all three elements of the <u>McCorpen</u> defense are satisfied. The Court agrees.

*Concealment*

Youman does not dispute that the first and third elements of AMS's <u>McCorpen</u> defense are satisfied. Indeed, the record demonstrates, first, that Youman intentionally concealed pertinent medical facts when he applied to work for AMS. In support of the

14

concealment element,[5] AMS points to Youman's own deposition testimony:

> Q: When you got hired, you went through the paperwork process to get your work visa, what else did you have to do at AMS to get your job?
> A: Preemployment.
> Q: And where was that?
> A: Concentra.
> Q: You just told me that before. What did you have to do at Concentra?
> A: Just – just some questionnaires and take a drug test.
> Q: Questionnaires about your medical history?
> A: About everything, yes.
> Q: And is that where you gave false answers about your prior back problems?
> A: Yes, sir.

Based on Youman's testimony, it is undisputed that he gave false answers regarding his history of back pain/injuries when he underwent a pre-employment physical at Concentra while applying

---

[5] In further support of this concealment element, AMS offers the Concentra Medical Center's medical questionnaire in which Youman checked "no" for both "back/spine" and "back pain" in response to the question "Have you ever had any disease or injury to...?"

Youman has moved for sanctions against AMS for its untimely disclosure of the Concentra records, which were requested at the outset of discovery, but only disclosed in connection with AMS's motion for summary judgment (albeit produced to Youman before the discovery deadline). At this time, the Court takes no position on Youman's motion for sanctions; the magistrate judge has ordered AMS to explain when and how it received the Concentra records. (AMS initially explained that Concentra previously produced a certificate of no records). Because Youman admitted in his deposition that he underwent the physical at Concentra and that he was dishonest in his answers to the medical questionnaire, the Court need not resolve the admissibility of the Concentra records, which is presently before the magistrate judge.

for employment at AMS.[6]  The intentional concealment prong of the McCorpen test is an objective inquiry. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 174 (5th Cir. 2005). It is satisfied on this record.

No genuine issue of material fact exists where a plaintiff conceals his prior injury, even if he denies having intentionally withheld the information. See id.; Bud's Boat Rental, Inc. v. Wiggins, No. 91-2317, 1992 WL 211453, *2 (E.D. La. Aug. 24, 1992).

> [A] seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the intentional concealment requirement.

Brown, 410 F.3d at 174 (citation omitted). Because there is no dispute that Youman intentionally misrepresented or concealed medical facts when he denied having prior back pain on a pre-employment medical questionnaire completed as part of his job application, the intentional concealment element of the McCorpen defense is satisfied.

---

[6] Notably, Youman was deposed on January 15, 2018.  The transcript reflects that Youman initially stated that he had never given "incorrect or false information about [his] history of spinal problems on any application form[,]" but Youman's counsel requested to take a break immediately following that answer. After the break, Youman retracted his prior testimony and admitted to providing AMS with "false information on a pre-employment physical."

*Causal Link*

As to the third element, the record demonstrates that there was a causal link between the concealed pre-existing injury to the low back and the injury Youman alleges he sustained to his low back while working for AMS.  There is no factual controversy on this point: Youman does not submit any evidence that calls into question this causal link between his prior back injury and the back injury he alleges he suffered during the rescue drill operation while working for AMS.  "[T]here is no requirement that a present injury be identical to a previous injury.  All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." Brown, 410 F.3d at 175-76 (noting that "employers need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees.").[7]  Because there is a connection between the

_____

[7] In Brown, the plaintiff argued there was no medical proof that his new injury was an aggravation of his old injuries, but the Fifth Circuit found that such proof was unnecessary. See Brown, 410 F.3d at 175-76. To establish a "causal link," it was enough for the defendant to show that the old and the new injuries "were to the same location of the [plaintiff's] lumbar spine." Id. at 176. "The inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes." Johnson v. Cenac Towing, Inc., 599 F. Supp. 2d 721, 728-29 (E.D. La. 2009); see also Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212-13 (5th Cir. 2006)(finding requisite connection when new back injury was

withheld information relative to a prior low back injury and the low back injury allegedly sustained, AMS has carried its burden to show a causal connection.

*Materiality*

Youman's challenge to AMS's <u>McCorpen</u> defense focuses on the second element: whether the concealed medical condition was material to AMS's decision to hire Youman. Youman insists that AMS has not proved that it materially relied on Youman's false answers to the questions regarding prior back injuries in his pre-employment physical with Concentra Medical Centers prior to hiring him. The Court disagrees.

The record indicates that Youman was required to submit to a pre-employment physical and to answer questions concerning his physical fitness for the job before AMS would hire him. In support of the materiality element, AMS offers the unsworn declaration of

---

"virtually identical" to previous back injury); <u>Noel v. Daybrook Fisheries</u>, 213 F.3d 637, 2000 WL 554455, at *2 (5th Cir. 2000) (table) (per curium) (finding requisite connection when both injuries were to the "same disc"); <u>Boatright v. Raymond Dugat Co., L.C.</u>, 2009 WL 138464, at *4 (S.D. Tex. 2009) (finding requisite connection when plaintiff's "prior and current injuries [were] both to his right hip"); <u>Jenkins v. Aries Marine Corp.</u>, 590 F. Supp. 2d 807, 813 (E.D. La. 2008) ("To find the requisite 'connection,' courts have looked to whether the injuries were identical or produced identical or substantially similar symptoms in the same part of the body.").

its President, John Lovell, who states under penalty of perjury that AMS relied upon Youman's representation that he had no pre-existing back injuries or back pain when it hired him.[8]  Youman submits that a "genuine issue of material fact exists as to whether Plaintiff, AMS, materially considered...Mr. Youman's assertions made on his pre-employment physical at Concentra."  But Youman fails to offer evidence to contradict the summary judgment record, including AMS President Lovell's declaration that AMS relied upon Youman's dishonest answers regarding his back condition when it hired him; absent an actual factual controversy on this point, there is no genuine issue remaining for trial concerning the materiality prong of the <u>McCorpen</u> defense.

Youman also overlooks case literature instructing that the materiality evidence present on this record supports AMS's submission that it is entitled to judgment as a matter of law on

---

[8] At paragraph 28 of the unsworn declaration under penalty of perjury, Lovell states:

> As part of the hiring process, AMS sent Mr. Youman for a United States Coast Guard Pre-Employment Physical at Concentra Medical Centers in Garden City, Georgia.  The examination was conducted on July 20, 2015, and the records pertaining thereto and maintained as business records by AMS are attached hereto as Item 14.  In completing the paperwork as part of the examination, Mr. Youman denied that he ever suffered an injury to his back and denied ever suffering from back pain. AMS relied upon these representations when it decided to hire Mr. Youman.

this issue. To be sure, the Fifth Circuit instructs that "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 175 (5th Cir. 2005). Here, there is no dispute that, before AMS hired Youman, it required that he answer questions about his physical fitness for duty and that, in response, Youman concealed prior back injuries. Youman's "history of back injuries is the exact type of information sought by employers like [AMS]." See Brown, 410 F.3d at 175. Thus, there is no genuine dispute that the medical questionnaire was specifically designed to elicit information concerning past back injuries, that such inquiries were rationally related to the job applicant's physical ability to perform job duties, and that Youman concealed his prior lower back injuries; accordingly, the concealed prior back injuries were material to AMS's decision to hire Youman. See Thomas v. Hercules Offshore Services, L.L.C., 713 Fed.Appx. 382, 387-88 (5th Cir. Mar. 2, 2018). The second prong of the McCorpen defense is satisfied here.

Accordingly, on this record, AMS has established a McCorpen defense: Youman admittedly concealed his prior medical condition, the concealed facts were material to AMS's decision to hire Youman,

and a causal connection existed between the concealed information and the injury complained of in this lawsuit. Therefore, Youman is not entitled to maintenance and cure, AMS's obligation to pay additional past or future maintenance and cure is hereby terminated, and Youman's claim for such benefits is dismissed.

*C.*

In its second motion for partial summary judgment, AMS submits that its decision not to approve Youman's discogram procedure and disc replacement surgery was not arbitrary and capricious and, therefore, punitive damages are not recoverable. The Court agrees.

An injured seaman may recover punitive damages for his employer's willful failure to pay maintenance and cure. Atl. Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009)(noting that "[p]unitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct."). The key to recovering punitive damages and attorney's fees associated with a willful failure to pay maintenance and cure is that the plaintiff must prove that the employer acted arbitrarily, wantonly, or outrageously; some element of bad faith on the employer's part must be established. See Harper v. Zapata Off-Shore Co., 741 F.2d 87, 90 (5th Cir. 1984). "[A]n employer," however, "is entitled to investigate a claim for maintenance and cure before tendering any payments to the seaman -- without subjecting itself to liability

for compensatory or punitive damages." Boudreaux v. Transocean Deepwater, Inc., 721 F.3d 723, 728 (5th Cir. 2013).

In Morales v. Garijak, Inc., 829 F.2d 1355, 1360-61 (5th Cir. 1987),[9] the Fifth Circuit instructed that egregious conduct supporting an award of punitive damages for arbitrarily failing to pay maintenance and cure had been found where the shipowner: "failed to conduct any investigation into the seaman's claim, withheld payments despite discovering through an investigation that the payments were due, [or] rejected a documented claim because the seaman did not consult the owner before seeking treatment for his injury and because the seaman had filed suit[.]" The Court underscores that punitive damages are available for willful, but not merely negligent, failure to pay or render timely cure.

Here, the record shows that AMS conducted an investigation of Youman's claim, as it was entitled to do. AMS assigned Patrick Aucoin of Aucoin Claims Service to handle the investigation into the incident. AMS's Human Resources Department was in contact with Youman following his return to shore. Mr. Aucoin attempted to meet with Youman, but Youman cancelled his meeting with the

---

[9] Morales was abrogated on other grounds by Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir. 1995), which was abrogated on other grounds by Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009).

claims adjuster.  The investigation revealed evidence that Youman had pre-existing back problems that he intentionally concealed from AMS.  Once suit was filed, AMS continued its investigation into Youman's maintenance and cure claim.  It was both the ongoing nature and the result of the investigation, AMS submits, that informed its decision to not fund the surgery performed by Dr. Dietze.  AMS characterizes its conduct and decision as reasonable and it submits that there is no evidence in the record that would support a finding that it acted arbitrarily or capriciously or egregiously or wantonly.  The Court agrees.

AMS submits that it considered at least seven factors in determining whether to fund the back surgery performed by Dr. Dietz: (1) the video of the alleged accident, which AMS characterizes as depicting "a minimal, non-violent incident"; (2) Youman's abrupt refusal to be interviewed after the incident, which AMS contends hindered its investigation; (3) Youman's history of back pain, which Youman concealed when he applied for employment with AMS; (4) Youman's history of suing prior maritime employers for what AMS characterizes as "questionable injuries"; (5) the lack of evidence that would indicate that Youman's back complaints in 2012 and 2013 had fully resolved; (6) Dr. Tender's opinion that Youman suffered no traumatic injury and is not a candidate for surgery; and (7) Dr. Fakier's opinion that there is no change in

Youman's lumbar spine as seen in the pre-incident and post-incident MRIs.

Youman counters that AMS's investigation has been "overly lax" and that a question of material of fact exists as to Youman's entitlement to maintenance and cure based upon the differing opinions of Mr. Youman's treating neurosurgeon, Dr. Dietze, and AMS's second medical opinion physician, Dr. Tender. Youman misapprehends the issue raised by AMS in its motion on punitive damages. The issue is not whether Youman is entitled to maintenance and cure,[10] but, rather, whether he may recover punitive damages; put differently, whether AMS's refusal to reimburse him for the surgery was arbitrary, egregious, and done in bad faith.

Youman submits that there is a genuine dispute as to whether AMS's failure to pay for his surgery was arbitrary or capricious, but he fails to submit any evidence that would support a finding approaching arbitrary or egregious or bad faith behavior by AMS. Contrary to Youman's argument, the record demonstrates that AMS did not simply rely on a second medical opinion to deny cure; it conducted an investigation that revealed intentional concealment

---

[10] The Court addressed this issue with respect to the McCorpen defense advanced by AMS in its separate motion for partial summary judgment.

about prior back injuries.  And, given the tactics employed by Youman's counsel in filing suit first in this Court, then dismissing and filing in an improper venue in state court in Baton Rouge, Youman would be hard pressed to show any delay attributable to AMS in deposing Youman and his treating physician.  Several of Youman's counsel's requests for authorization for surgery occurred before AMS even initiated this declaratory judgment action; AMS renewed its request to depose Youman and Dr. Dietze back in September 2017, but Youman's counsel failed to execute the waiver of service.  AMS wrote to Youman's counsel:

> When Mr. Youman claims in whatever court case ultimately moves forward that AMS unduly delayed his back surgery, we will refer him to this correspondence and the preceding pleadings and correspondence, all of which show that AMS has made every attempt to complete the investigation which the law allows it to complete before making the decision about whether the surgery recommended by Dr. Dietze to be performed on Mr. Youman's back falls within the maintenance and cure obligation of AMS.

AMS again asked for dates for the depositions of Youman and Dietze in an email dated November 14, 2017.  Putting the parties' finger pointing aside, in any event, the "delay" Youman attributes to AMS is absent on this record:  both Youman's and Dietze's depositions were completed just over four months after all issues were joined

and all parties had appeared in this declaratory judgment proceeding instituted by AMS.[11]

Even if the Court assumes (contrary to the record) that there was some delay attributable to AMS, punitive damages are available to remedy only the most egregious conduct. Although "[n]o bright line separates the type of conduct that properly grounds an award of punitive damages—a ship-owner's willful and callous default in its duty of investigating claims and providing maintenance and cure—from the type of conduct that does not support a punitive damages award[,]" Harper v. Zapata Off-Shore Co., 741 F.2d 87, 90 (5th Cir. 1984), examples of employer behavior that could merit punitive damages include "(1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically." Tullos v. Resource Drilling, Inc., 750 F.2d 380, 388 (5th Cir. 1985). AMS's reliance in part on a conflicting medical opinion as part of a broader investigation into the veracity of a seaman's injury fails to reach the threshold

---

[11] AMS submits, and Youman does not dispute, prior to SBM filing its answer on November 15, 2017, there was no viable forum in which all three interested parties could participate in these critical discovery exercises.

of unreasonable, let alone egregious or arbitrary or bad faith, conduct.

On this record, there is no genuine dispute as to whether AMS's conduct in declining to fund Youman's back surgery was arbitrary and in bad faith. It was not. The facts presented by this record patently do not approach the high threshold met in other cases where a punitive damages award was warranted, such as "laxness in investigating a claim that would have been found to be meritorious." See Breese v. AWI, Inc., 823 F.2d 100, 104 (5th Cir. 1987)("[W]e think that AWI's investigation of Breese's claim in this case, which did not include an inquiry of any physician (much less Breese's treating physicians) or a review of Breese's medical records, was impermissibly lax under any reasonable standard, rendering AWI's decision not to pay maintenance and cure beyond Breese's discharge from the hospital arbitrary and capricious."). AMS investigated the incident, assessed Youman's claim, examined his prior medical history, discovered that Youman had a history of prior alleged injuries and claims against employers, consulted doctors that examined Youman and his medical records, and deposed Youman and his treating physician. Youman fails to persuade the Court that AMS's investigation was lax or that its decision not to fund the surgery was arbitrary and in bad faith. Absent evidence in the record indicating that AMS's acted

arbitrarily and in bad faith in declining to fund Youman's surgery, Youman's claim for punitive damages must be dismissed.

Accordingly, IT IS ORDERED: that AMS's motions for partial summary judgment are hereby GRANTED.  Youman's claims against AMS for maintenance and cure and for punitive damages are hereby dismissed.

New Orleans, Louisiana, December 12, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE